Lawrence NICKERSON, et al.,
Plaintiffs, Appellants,

v.

MATCO TOOLS CORPORATION, a DI-
VISION OF the JACOBS MANUFAC-
TURING COMPANY, Defendant, Ap-
pellee.

No. 86–1622.

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1987.

Decided March 13, 1987.

**530**

Alexander Whiteside, with whom Allan R. Rosenberg, Boston, Mass., was on brief, for plaintiffs, appellants.

Michael R. Coppock, with whom Rubin and Rudman, Boston, Mass., was on brief, for defendant, appellee.

Before BOWNES, Circuit Judge, ALDRICH, Senior Circuit Judge, and GIGNOUX,* Senior District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Plaintiffs Nickerson, Miller, Cilley, and Worrall were self-employed truck-traveling sellers of mechanics' tools, broadly classified as hard line and soft line. Three plaintiffs previously had distributorship contracts with a supplier, Mac Tool Company, which furnished the hard line. An associated company, defendant Mac Allied, supplied the soft line. Both companies were slow, causing plaintiffs serious back-order problems. The companies decided to break up, and defendant Mac Allied, now to be known as Matco Tools, planned to carry both lines. One Lavoie was to be district manager of Matco, and act as an intermediary between the company and its distributors. In order to persuade plaintiffs to sign up with Matco, which previously had not carried hard line tools, he made various statements indicating that Matco would maintain a good supply, and hence minimize back-orders. One of these statements, which could have been found highly influential, was that he had been to the company warehouse and seen the tools, and that there were plenty to fill eighty to eighty-five percent of all orders. This statement proved to be conspicuously incorrect, to plaintiffs' great alleged loss.

While other statements could have been found to be mere promises or expressions of hope, this statement clearly made a case for the jury on plaintiffs' claim for deceit. Unfortunately, in spite of vigorous objection by plaintiffs, the court charged the jury (four times) that in order for plaintiffs to recover for deceit, they had to prove that Lavoie knew the statement to be false. Plaintiffs failed to obtain favorable verdicts, and now appeal, assigning this error in the charge.[1]

There must be a new trial. Unfortunately, nothing is clearer than the fact that under Massachusetts law plaintiffs need not prove that Lavoie knew his statement to be false. Citing cases going back to Chief Justice Shaw, the court said in *Powell v. Rasmussen*, 355 Mass. 117, 118, 243 N.E.2d 167, 168 (1969),

> In this Commonwealth it has been held in a long line of cases that "the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive." (quoting *Chatham Furnace Co. v. Moffat*, 147 Mass. 403, 404, 18 N.E. 168, 169 (1888)).

*See also Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 444–46, 333 N.E.2d 421, 428–29 (1975). The quoted language is exactly appropriate. Defendant's only answer is that the charge must be read as a whole, and that in connection with plaintiffs' count for negligent misrepresentation the court said nothing about having to prove knowledge.

A proper instruction on negligent misrepresentation did not contradict, let alone wipe out the effect of, four separate references to plaintiffs' need to prove knowledge of falsity on the counts for deceit. In addition, the misrepresentation

---

* Of the District of Maine, sitting by designation.

1. Plaintiffs do not appeal from the judgments against them on defendant's counterclaims.

count required that plaintiffs prove lack of due care, which is not a requirement for deceit. Of course, if plaintiffs had succeeded on the negligent misrepresentation counts, there would have been no harm, but they may have lost there for not proving negligence, and lost on deceit for not proving knowledge; yet we are told that the charge as a whole was proper when it is not even arguable that plaintiffs had to prove either factor. It is incomprehensible that defendant could make such a contention. We expect better things of counsel.

■ There is a separate question as to plaintiff Cilley, who is a resident of New Hampshire, and the facts show his case to be governed by New Hampshire law. The court charged the jury that, except that the burden of proof is heavier, the New Hampshire law is "very similar" to that of Massachusetts, i.e., that plaintiff must prove knowledge of falsity. In fact, it is enough that the defendant was consciously indifferent to whether the statement was true or not. *Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 662 (1st Cir.1981). Cilley requested mention of this alternative, but the court ignored the request, a matter of some consequence when it had stressed knowledge, simpliciter, four times. Cilley further requested a charge that it would be sufficient to show that Lavoie's controlling intent was to look after his own interest rather than carry out his commitments to plaintiff. This, too, is a specific limitation to New Hampshire's requirement of actual knowledge, *Lampesis v. Comolli*, 101 N.H. 279, 283, 140 A.2d 561, 564 (1958). Plaintiff's case was necessarily circumstantial, and it was important for him to have the jury so informed. The court's conventional—and proper—boiler-plate about permissible inference and weighing a witness's self-interest was no adequate substitute. Cilley, too, is entitled to a new trial.

■ More difficult questions face the Massachusetts plaintiffs with respect to their counts under Mass.G.L. c. 93A. The court, properly sitting without a jury, *see Service Publications, Inc. v. Goverman*, 396 Mass. 567, 577–79, 487 N.E.2d 520, 527 (1986); *Nei v. Burley*, 388 Mass. 307, 311–

15, 446 N.E.2d 674, 677–79 (1983), found against them. The court's findings, delivered orally, included the statement that it was "not persuaded ... that any promise as we know it in the law, one which constitutes a misrepresentation of one's state of mind, was made as distinguished from a state of expectation." The court, of course, was free to make findings unrelated to what the jury's might be—in this case its decision preceded the verdict—and if it had clearly made factual findings against plaintiffs, that would have been the end of it. *See, e.g., Chedd-Angier Production Co. v. Omni Publications International, Ltd.*, 756 F.2d 930, 939 (1st Cir. 1985). Its findings were very brief, however, and we do not so read them. Rather than disbelieving plaintiffs' testimony, it stated it was of the opinion that everyone was telling the truth. Then, in support of its conclusion that the law was "decisive" in favor of defendant, it made a number of additional findings apparently importing its erroneous views on the common law actions for misrepresentation. It found, for example, that there "was not the type of deception by way of representation rising to the level ... of conduct which is proscribed by Chapter 93A ... or Chapter 358A," and that the behavior of defendants did not rise to a sufficient "level of rascality" to constitute a violation of the respective statutes. However, common law deceit is normally "rascality" enough. *See Bond Leather Co. v. Q.T. Shoe Manufacturing Co.*, 764 F.2d 928, 937 (1st Cir.1985). There is a close relationship between a common law action for fraud or deceit and an action for unfair or deceptive practices under Chapter 93A. *See, e.g., Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 778, 489 N.E.2d 185, 196–97 (1986); *Glickman v. Brown*, 21 Mass.App. 229, 235, 486 N.E.2d 737, 741 (1985). Despite some unrelated findings, the court's conclusions, taken as a whole, may well have been affected by its view of the common law, and its ultimate determination must, accordingly, be set aside, and a new trial ordered, unless we uphold its ruling that the 1985 amendment of the statute requires that the actions be dismissed.

The provisions of Chapter 93A, § 11, as they existed at the onset of suit, applied, with certain exceptions, to "unfair or deceptive" acts in the conduct of any trade or commerce "directly or indirectly affecting the people of [the] commonwealth." Mass. G.L. c. 93A, §§ 1, 11. On September 18, 1985, however, subsequent to the bringing of suit, the legislature amended section 11 to provide that "[n]o action under the provisions of this section shall be brought or maintained in any court unless the parties to such action have a place of business in the commonwealth at the time the unfair method of competition, act or practice is employed." 1985 Mass.Acts. c. 278, § 3. On May 27, 1986, at the conclusion of trial, the court ruled that this amendment required dismissal of the counts under Chapter 93A. Corrected judgment in the case was entered on July 11, 1986. On July 28, 1986, the legislature further amended the statute to remove the "place of business" requirement. By its terms, this amendment applied "to all actions brought or maintained on or after December seventeenth, nineteen hundred and eighty-five." 1986 Mass.Acts. c. 363. Thus plaintiffs, (1) were entitled to bring the suit when they did; (2) seemingly had no right to "maintain" it at the time of trial and judgment, since defendant had no place of business here, but (3) may have a revival during appeal.

■ As a general rule, a statute is applied prospectively unless a contrary intent is clearly manifested by the legislature. *E.g., Nationwide Mutual Insurance Co. v. Commissioner of Insurance,* 397 Mass. 416, 491 N.E.2d 1061 (1986); *Boston Gas Co. v. Department of Public Utilities,* 387 Mass. 531, 441 N.E.2d 746 (1982). The 1985 amendment, by its terms, provided that "[*n*]*o action* under this section shall be *brought or maintained in any court* unless the parties to such action have a place of business in the commonwealth at the time the unfair method of competition, act or practice is employed." We find that

the combination, "brought or maintained," unambiguously encompasses all pending actions. *Cf. Goodwin Brothers Leasing, Inc. v. Nousis,* 373 Mass. 169, 173, 366 N.E.2d 38, 41 (1977). Any other reading, particularly in light of the word "or," would make the next word redundant.

■ Defendant accomplishes nothing, however, by persuading us that the 1985 amendment meant that the judgment of dismissal was correct. By essentially the same reasoning, we would hold that the 1986 amendment, containing the same language, "brought or maintained," for present purposes revoked the 1985 amendment, and restored plaintiffs to their original position. The legislature obviously intended that the 1986 amendment be given broad application. The effective date chosen—December 17, 1985—corresponds to the apparent effective date of the 1985 amendment, *cf.* Comment, 71 Mass.L.Rev. 50, 52 (1986), indicating that the legislature sought to give as little effect as possible to contrary provisions of the earlier statute. Under Massachusetts law, although plaintiffs' cases had gone to judgment, they were still "pending" on appeal, and subject to a legislative infusion of this nature. *City Council of Waltham v. Vinciullo,* 364 Mass. 624, 627, 307 N.E.2d 316, 319 (1974). Federal "pending" judgments are similarly open. *See Theriault v. Brennan,* 641 F.2d 28, 29 n. 1 (1st Cir.1981); *Eikenberry v. Callahan,* 653 F.2d 632, 633–35 (D.C.Cir.1981).

Without need of further pursuing the subject, we remark that any contention that the 1986 amendment could not be retroactive would also preclude application of the 1985 amendment.[2]

The court made no separate findings as to Cilley's claim under the New Hampshire statute. We make the same assumptions as to the possible effect of its exaggerating the state requirements for common law

---

**2.** No party has contended that either amendment raises constitutional questions. *See generally Nationwide Mutual Insurance Co. v. Commissioner of Insurance,* 397 Mass. 416, 423–24,

491 N.E.2d 1061, 1065–66 (1986); *Nantucket Conservation Foundation v. Russell Management, Inc.,* 380 Mass. 212, 215–18, 402 N.E.2d 501, 503–05 (1980).

deception. There must be a new trial here as well.

*Reversed; new trials ordered.*