Miller Brewing v. Silver Bros.          CV-88-229-B    09/12/97

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

**Miller Brewing Company**

**v.**                                          Civil No. 88-229-B

**Silver Bros. Co., Inc.**
**and Hospitality Holdings Corp.**


### MEMORANDUM AND ORDER

On December 20, 1996, I denied Miller Brewing's motion to dismiss one of Silver Brothers' counterclaims based on New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A (1995 & Supp. 1996). Miller Brewing now asks me to reconsider my decision.

Miller Brewing argued in its motion to dismiss that Silver Brothers failed to state a claim for relief under the Consumer Protection Act ("CPA"). I denied the motion in a margin order, noting that the First Circuit had determined that the CPA was not limited to actions brought by ultimate consumers. Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams, 40 F.3d 492 (1st Cir. 1994), cert. denied, 515 U.S. 1103 (1995). I did not address Miller Brewing's additional contention that the complaint failed to sufficiently allege that it had engaged in a "deceptive act or practice in the conduct of any trade or commerce" under

the CPA.  <u>See</u> N.H. Rev. Stat. Ann. 358-A:2 (1995).  I therefore grant Miller Brewing's motion to reconsider in order to address this contention.

The New Hampshire Consumer Protection Act provides, in pertinent part,

> It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within the state.  Such unfair method or practice shall include, but is not limited to, the following:

N.H. Rev. Stat. Ann. 358-A:2.  The CPA then lists thirteen categories of acts or practices that are deemed to be unfair or deceptive under the Act:

I.   Passing off goods or services as those of another;
II.  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
III. Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
IV.  Using deceptive representations or designations of geographic origin in connection with goods or services;
V.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;
VI.  Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;
VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
VIII. Disparaging the goods, services, or business of another

2

by false or misleading representation of fact;
IX.     Advertising goods or services with intent not to sell them as advertised;
X.      Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;
X-a.    Failing to disclose the legal name or street address of the business under RSA 361-B:2-a:
XI.     Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or
XII.    Conducting or advertising a going out of business sale: (a) which lasts for more than 60 days; . . .

N.H. Rev. Stat. Ann. 358-A:2.  Finally, the CPA provides that

"[i]t is the intent of the legislature that in any action or

prosecution under this chapter, the courts may be guided by the

interpretation and construction given Section 5(a)(1) of the

Federal Trade Commission Act. . ."  N.H. Rev. Stat. Ann. 358-A:13

(1995).

The New Hampshire Supreme Court recently addressed the scope

of unfair or deceptive acts or practices under the CPA in Roberts

v. General Motors Corp., 138 N.H. 532 (1994)[1].  Dennis Roberts

entered an agreement to purchase a Chevrolet dealership in

Hampton, N.H., which required approval of General Motors

---

[1]  Roberts was decided on June 7, 1994, the same day that
Eastern Mountain was argued.  Rehearing was denied in Roberts on
July 28, 1994.  Eastern Mountain was decided on November 28,
1994.  The timing of these decisions may indicate why the First
Circuit did not discuss Roberts.

Corporation ("GMC"). GMC conceded that Roberts submitted a complete and satisfactory application to GMC. While it considered Roberts' application, GMC designated Hampton as a site for a minority-owned dealership, but did not inform Roberts. Instead, GMC simply exercised its right of first refusal and denied Roberts' application. Id. at 535. In rejecting Roberts' claim that GMC's conduct violated the CPA, the court first observed that the acts Roberts' complained were unfair or deceptive were not of the type particularized in the CPA. Roberts, 138 N.H. at 538. The court also noted in dicta that the CPA should be interpreted in light of Section 5 of the analogous Federal Trade Commission Act. See N.H. Rev. Stat. Ann. 358-A:3 (1995); see also 15 U.S.C.A. §45(a)(1)(1997)("FTC Act"). However, the court noted that neither the Federal Trade Commission nor courts applying the FTC Act had found mere refusals to deal unfair or deceptive acts or practices in factually similar cases. As the alleged conduct was not of the type expressed in the CPA nor illegal under the FTC Act, the court affirmed a finding that the CPA did not apply to a prospective buyer of an automobile dealership after the dealership exercised its right of first refusal under a dealership agreement. Roberts, 138 N.H. at 538-539.

**4**

The New Hampshire Supreme Court again addressed the CPA's scope in <u>Gautschi v. Auto Body Discount Ctr., Inc.</u>, 139 N.H. 457 (1995). In <u>Gautschi</u>, the plaintiffs purchased a used car from Auto Body Discount Center ("ABDC") in 1987. Shortly thereafter, the car was involved in an accident and repaired by ABDC. In 1990, the car experienced excessive tire wear, which ABDC attributed to incorrectly sized tires that the Gautschis had installed. A mechanic at another auto body shop attributed the problem to unrepaired structural damage. <u>Id.</u> at 458. The Gautschis sued ABDC for violating the CPA by intentionally misrepresenting to them in 1990 that the tires had been improperly sized.[2]

In deciding whether the alleged acts were unfair or deceptive, the court looked to the principles of unfairness contained in the FTC Act and noted that the FTC examines consumer unfairness by determining:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or

---

[2] The Gautschis originally based their CPA claim on the repairs done in 1987. They later amended the complaint to include a claim based on the sale of the vehicle. The New Hampshire Supreme Court concluded that these claims were barred by the CPA's two-year exemption provision. <u>Gautschi</u>, 139 N.H. at 459.

otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

Gautschi, 139 N.H. at 460 (quoting FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n.5 (1972)); see also Winter Hill Frozen Foods and Servs., Inc. v. Haagen-Dazs, Co., 691 F. Supp. 539, 549 (D. Mass. 1988) (applying FTC test to Massachusetts CPA). Using this standard, the court reversed the findings of the trial court that ABDC had violated the CPA, because it saw "no reason on these facts to expand the definition of an unfair or deceptive act or practice to encompass representations made long after the true deceptive act or practice itself occurred." Gautschi, 139 N.H. at 460.

In this case, Silver Brothers bases its CPA claim on various misrepresentations made by Miller Brewing prior to and during the distributorship arrangement. Silver Brothers alleges that Miller Brewing misrepresented the terms by which Miller Brewing would sell inventory to Silver Brothers, misrepresented credit terms, misrepresented its intentions regarding a letter of credit, misrepresented the security required against the credit terms, and misrepresented its intentions regarding the Silver Brothers

6

distributorship.  Construing these allegations in the light most favorable to the plaintiff, they would state a claim for intentional misrepresentation under New Hampshire law.[3]

Having reviewed the New Hampshire Supreme Court's opinions in Roberts and Gautschi, I am satisfied that a claim of intentional misrepresentation in a commercial context that results in substantial injury to a consumer or business is the type of action that ordinarily would fall within the scope of the FTC Act.  Therefore, it is also sufficient to qualify as an unfair and deceptive act or practice under New Hampshire's CPA. See Nickerson v. Matco Tools Corp., 813 F.2d 529, 531 (1st Cir. 1987) (common law intentional misrepresentation states a claim under the Massachusetts CPA); In re Lone Star Indus., 882 F. Supp. 482 (D. Md. 1995) (same, interpreting Massachusetts CPA); Computer Sys. Eng'g, Inc. v. Qantel Corp., 571 F. Supp. 1365, 1372 (D. Mass. 1983) ("A valid common law claim for misrepresentation ordinarily furnishes a basis for liability

---

[3]  In New Hampshire, a claim of intentional misrepresenta-tion, otherwise known as fraud, requires proof that: (1) the defendant knowingly misrepresented material facts, (2) the defendant acted with the fraudulent intention that another person act on the misrepresentations, and (3) the plaintiff relied to his detriment on the misrepresentations. Caledonia, Inc. v. Trainor, 123 N.H. 116, 124 (1983); see also Patch v. Arsenault, 139 N.H. 313, 319 (1995).

7

under [the Massachusetts statute]."), aff'd 740 F.2d 59 (1st Cir.
1984). Because Silver Brothers' counterclaim states a valid
claim for relief under the New Hampshire Consumer Protection Act,
I deny Miller Brewing's motion to dismiss the counterclaim.

## CONCLUSION

For the foregoing reasons, I grant Miller Brewing's motion
to reconsider (document no. 165), but again deny the motion to
dismiss Count VII of the counterclaims (document no. 159).

SO ORDERED.


_____
Paul Barbadoro
United States District Judge


September 12, 1997

cc:  James K. Brown, Esq.
     Lawrence M. Edelman, Esq.
     William S. Gannon, Esq.
     Victor W. Dahar, Esq.


8